## HILL v. THRASHER et al.

No. 9573.

Court of Civil Appeals of Texas. Austin.

July 24, 1946.

Rehearing Denied Oct. 2, 1946.

Faulk, Sharpe & Cunningham, by T. Gilbert Sharpe, all of Brownsville, and Eugene C. Williams, of San Antonio, for appellant.

Robt. B. Thrasher and W. Clarke Blalock, both of Austin, for appellees.

BAUGH, Justice.

Appeal is from a declaratory judgment construing the joint will of Frank W. Hill and May B. Hill, both deceased. The only issue presented is whether the 100-acre tract of land in Travis County, devised to appellant in said will, passed to him subject to certain debts against it, secured by liens thereon; or was, under said will, exonerated from such indebtedness.

Appellant makes two contentions: 1. That the testators intended that the property pass to appellant, one of the devisees, free from all debts and liens against it. And 2. That such debts and liens were personal obligations of the testators which should have been paid off, as other personal debts, out of the assets of the estate. These contentions were made in a trial to the court without a jury and overruled, the declaratory judgment holding that appellant took subject to such debts; hence this appeal.

The cardinal rules of construction of wills are now well settled and there is no controversy as to such rules between the parties to this suit. Suffice it to say that the intent of the testator is controlling and

when ascertained it should be effectuated. It should be ascertained, if possible, from the provisions of the will itself. But if not clearly disclosed by such provisions, and any uncertainty exists as to the testator's intent, then resort to extraneous proof may be had to show the relationship of the parties, the nature and character of the subject matter devised, the facts and circumstances surrounding the execution of such will, etc. See 44 Tex.Jur., § 135, p. 684 et seq.

In 1918 Frank W. Hill and wife, May B. Hill, owned as community property, along with much other property, two places near the city of Austin, each consisting of approximately 100 acres, one known as the "Dairy Place"; and the other known as the "Grove Place." They resided on the Grove Place and operated a dairy on the other. They had two children, James E., appellant herein, and Dorothy, now the wife of Robert B. Thrasher. On March 8, 1918, these parents conveyed to James E. Hill the Dairy Place in consideration of the execution by him of one vendor's lien note for $7,300, due 60 days after date; and 10 additional notes for $792.50 each, due one each year from 1928 to 1937. The $7,300 note was transferred to the Federal Land Bank of Houston, Texas, and made a first lien on said land. The other notes were subsequently transferred to the Austin National Bank.

James E. Hill moved on the Dairy Place in 1918 and operated it until he married in 1921. Due to disagreements with his father, Frank W. Hill, he then moved away from, and apparently completely abandoned said property. Who paid the interest on the Federal Land Bank note during those three years is not clear. In October 1921 Frank W. Hill took possession of said property and continued in complete control, use and occupation of it as his own, paying all taxes and the semi-annual payments due the Federal Land Bank up to the time of his death in July 1941. While the trial court found that the conveyance of 1918 was rescinded in October 1921, the land was never reconveyed to F. W. Hill by James E. Hill; F. W. Hill declined to accept a reconveyance thereof from his son; and in June 1937, James E. Hill and wife renewed and extended said indebtedness to said land bank, joined therein by F. W. Hill, with the recital that his joinder was for the purpose of recognizing the superiority of said land bank's lien on said land.

Meantime James E. Hill had moved to San Antonio in 1931, leaving his family in Austin. And for several years prior to the execution in May 1938 by F. W. and May B. Hill of their joint will, they had contributed substantially to the support and maintenance of James E. Hill's family, then consisting of his wife and three daughters, whom he had in large measure abandoned. Such were the circumstances under which said will was executed.

The will recited that all the property therein disposed of was community property. It was devised to the survivor with power in such survivor to control, manage, mortgage or sell; but on the death of the survivor, all property which had not been disposed of was to pass as therein provided. The Dairy Place was devised to James E. Hill. The Grove Place was devised to Dorothy Hill Thrasher. Devise of other lands in Freestone and Liberty Counties was made in equal shares to James E. Hill, Dorothy Hill Thrasher, Annie Webb Blanton (sister of May B. Hill), and Mary Belle Hill (wife of James E. Hill). Said will also specifically directed that the indebtedness to the Austin National Bank (being the notes executed in 1918 by James E. Hill, transferred to said bank by F. W. Hill and secured by a second lien on the Dairy Place) be paid by the executor out of said estate. Further that the indebtedness against the home in Austin of Annie Webb Blanton, and that owed by James E. Hill on his home in Austin, then occupied by his family, be likewise paid by such executor. The residue of said estate was made a trust fund, with Robert B. Thrasher as trustee thereof, for maintenance, support and education of the wife and children of James E. Hill; provided that the trust terminate when the youngest child should reach the age of 21 years; and that such residue then pass, subject to named contingencies not material here, one-half to Mary Belle Hill, wife of James E., and the other half to her children, granddaughters of the testators. The will discloses a particular concern of the testators for the welfare of their grand-

daughters, the children of James E. Hill, and for his wife whom appellant, at the time the will was executed, had in large measure abandoned.

The indebtedness to the Austin National Bank was established by judgment against Robert B. Thrasher, as administrator and independent executor, in the sum of $8,-583.24, and paid off by him. The other debts specifically provided for in said will were also paid. That of James E. Hill on the Austin property was compromised and settled by the executor for $6,000. At the time of Frank W. Hill's death in 1941, there was evidence to show the following: That the Grove Place, devised to the daughter, was valued at $20,000, and the other property devised to her valued at $5,000, thus aggregating her share in the estate in the sum of $25,000. The Dairy Place had a value of $15,000 against which there existed an indebtedness, secured by liens thereon, in the aggregate as of June 15, 1945, of $5,-462.03, of which no mention was made in said will, and no provision for payment thereof made. In addition to the devise of said property to James E. Hill, the testators provided for payment of indebtedness against him which was settled for $6,000; and set up a trust estate for the benefit of his family, valued, after payment of all debts provided for in said will, at between $19,000 and $20,000; the residue of which, after the execution of the trust, passed to his wife and children. The total value of the portion of testators' estate, not including the $6,000 debt of James E. Hill paid out of said estate, and after deducting from such devises the indebtedness against the Dairy Place, which either went directly to James E. Hill or to or for the benefit of his wife and children, aggregated approximately $29,000 as against a value of approximately $25,000 devised to the daughter. In view of all these circumstances, we think the trial court was fully warranted in finding that it was the purpose and intent of the testators to treat their children alike; and that it was their intent also to protect the interests of the wife and children of James E. Hill by dividing his portion of testators' estate with his wife and children and safeguarding their interests accordingly.

■ These facts and circumstances strongly indicate, we think, an intent of the testators not to exonerate the Dairy Place from the debts against it here involved. All other devises and bequests to other beneficiaries were specific. Such properties specifically devised would not therefore be liable for the debts against the Dairy Place, unless the will itself evidences an intention to the contrary. Currie v. Scott, Tex.Sup., 187 S.W.2d 551, 555, and cases therein cited. Since no other property or funds of the estate remained after payment of the debts and bequests specifically directed except that passing to trust estate set up for appellant's wife and children; the only source for payment of the debts against the Dairy Place, as contended for by appellant, would be out of and at the expense of the trust estate. Obviously, in the light of appellant's conduct, his failure to adequately provide for his family, and the express provisions in the will for their welfare; it is hardly conceivable that the testators intended that their unrestricted devise to appellant of designated properties should be further increased by deducting such increase from the portion set aside in trust for his wife and children.

■ We are clear in the view not only that no such intent is to be found either within the four corners of the will, the relationship of the parties, the objects sought to be obtained by the testators, nor in the surrounding facts and circumstances; but that a contrary intent is plain. The will expressly provided for the payment of designated debts, among them one secured by a second lien on said property of more than $7,000. Had the testators intended that the other debts against said property, originally incurred by James E. Hill himself in 1918, renewed and extended by him in 1937, and on which he was, so far as the Federal Land Bank was concerned, still personally liable, be paid out of other funds or property of their estate, they would no doubt have expressly so provided. Their failure to do so is we think significant. Consequently the appellant, who elected to take under said will, took said property subject to the other debts against it. Currie v. Scott, supra; Ann. in 5 A.L.R. 488; 72 A.L.R. 709; 120 A.L.R. 577.

Appellant cites and relies upon numerous authorities holding that in a rescission of a conveyance by repossession of the property by the grantor, equity requires that the parties be placed in statu quo. See 10 Tex. Jur., §§ 221-223, pps. 389-395; 43 Tex.Jur., § 193, p. 331; 12 Am.Jur., § 455, p. 1038. That consequently appellant was relieved from the obligation executed by him and assigned by F. W. Hill to the Federal Land Bank; and that F. W. Hill having repossessed the land, that debt became the personal obligation of F. W. Hill. While appellant did testify that his father did agree orally in 1921 when he repossessed the property to pay all taxes, etc., and make the payments to the Federal Land Bank; he declined to accept from James E. Hill a reconveyance of said land. Nor did he ever agree in writing to pay such debt. It still remained the personal obligation of appellant and was renewed and extended by him as such in 1937. In joining in that renewal F. W. Hill made no agreement to pay it, nor to be liable for it. His joinder was only for the purpose of recognizing the superiority of the land bank s lien on the property. Nowhere was appellant released in writing from primary and personal liability on that indebtedness. Undoubtedly appellant had the right by suit, by written contract, or as against any claim asserted by F. W. Hill, to be relieved from such primary liability; but he has never sought to do so. He could not have been required by F. W. Hill after 1921 to have made any payments to said land bank. No attempt was made to do so. F. W. Hill made them himself to protect the land against foreclosure. He merely treated such notes as a debt against the land held by a third party. Even if said debt be treated as one which in equity F. W. Hill should pay on behalf of appellant; still in his will F. W. Hill, in his effort to be fair with both his children and to protect the interests of appellant's wife and children (something which the trial court in effect found appellant had not done), clearly had the right to shift the responsibility for the payment of such debt back to James E. Hill as a condition of the devise to him of other property. Such in effect is what he did.

The only other contention made by appellant is that the trial court erred in refusing to make a requested finding of fact to the effect that while the testators were contributing to the support of appellant's family, they were using certain properties belonging to appellant and used the profits and proceeds therefrom to make such contributions. There was no evidence, however, as to how much the contributions of the testators to appellant's family through the years amounted to, nor what such contributions consisted of. Nor, conceding that testators did occupy and use some property during those years which belonged to appellant, there was no proof whatever that such property yielded any profits or proceeds; or, if it did, whether any of same was contributed to appellant's family. Consequently there was no evidence to sustain such a requested finding.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.