In the Matter of the ESTATE OF A. J. and Lela COHORN.

No. 5656.

Court of Appeals of Texas, Eastland.

Oct. 8, 1981.

Rehearing Denied Oct. 29, 1981.

Paul New, Denver City, for appellant.

John A. Flygare, David A. Ellison, Lubbock, for appellee.

RALEIGH BROWN, Justice.

This is a consolidated suit to construe the joint and mutual will of A. J. Cohorn and wife, Lela Cohorn, and to determine whether the will should be probated as to A. J. Cohorn. The primary issue is whether a misdescription in a will may be explained by extrinsic evidence.

A. J. and Lela Cohorn executed the will on January 22, 1964. A. J. Cohorn died January 24, 1965. Lela Cohorn died May 20, 1979. The joint and mutual will was probated as to Lela Cohorn. The proponent of the will, as to A. J. Cohorn, is B. J. Cohorn. One of several defendants is Pauline Hall, who was served but did not appear. Pauline Hall and B. J. Cohorn are

the children of A. J. and Lela Cohorn. Also designated as defendants were M. F. Cohorn, A. B. Cohorn, J. B. Cohorn, Myrtle Lee Anderson and Eunice Crow, who are the children of A. J. Cohorn and his first wife. These defendants challenge the probate of the will as to A. J. Cohorn asserting that no attempt to probate the will was instituted within four years after the death of A. J. Cohorn. They further urge that even if the will is probated as to A. J. Cohorn, B. J. Cohorn is not entitled to take under the will because the tract devised to him in the will did not exist. Based on the jury's verdict, judgment was entered admitting the will to probate as to A. J. Cohorn and construing the will to devise to B. J. Cohorn the tract of land in dispute. All defendants except Pauline Hall appeal. We affirm.

Appellants first challenge that part of the judgment which construed the will to devise to B. J. Cohorn the tract of land in dispute, being Tract 81, League 278. They contend that the trial court erred in failing to hold as a matter of law that B. J. Cohorn was not entitled to take under the will, as said tract was not described in the will, and thus, all property owned by A. J. and Lela Cohorn passed to them and Pauline Hall under the general residuary clause. We disagree.

Paragraph 3 of the will specifically devised to B. J. Cohorn, upon termination of the life estate devised to the survivor, Tract 81, League 277, Glasscock County School Lands, Dawson County. It is undisputed that such tract does not exist. However, upon execution of the will and upon their demise, the testators did own Tract 81, League 278, and part of Tract 82, League 277, Glasscock County School Lands, Dawson County. B. J. Cohorn urged that the testators meant to devise to him Tract 81, League 278 which the testators owned, but mistakenly described the property as Tract 81, League 277.

■ The question becomes, then, whether the trial court erred in admitting extrinsic evidence to explain the testators' intent regarding the devise of a nonexistent tract of land, and more specifically, whether testimony regarding the declarations of the testator are admissible. Appellants argue that paragraph 3 of the will is clear and unambiguous and that under such circumstances it is the duty of the court to construe the will from the words used and that the intent of the testators must be drawn from the will, not the will from the intent. Therefore, extrinsic evidence should not have been admitted to show the intent of the testators by such devise even though it describes a nonexistent tract of land. Appellants cite *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960) in support of their contentions. Appellants correctly state the law in this regard and their contentions would be correct if the description in the will was unambiguous. However, it is our determination that the misdescription in the will constitutes a latent ambiguity and thus, the extrinsic evidence, including testimony of the oral declarations of the testators, is admissible to show the intent of the parties. *Stewart v. Selder*, 473 S.W.2d 3 (Tex.1971); *Anderson v. Dubel*, 580 S.W.2d 404 (Tex.Civ.App.—San Antonio 1979, writ ref'd n. r. e.).

The Court in *Anderson v. Dubel* said: There are numerous cases holding that extrinsic evidence may be admitted to aid in explaining a testator's intent as to the disposition of his properties, where the language used in the will is uncertain or creates an ambiguity, either latent or patent. *Hinson v. Hinson*, 154 Tex. 561, 280 S.W.2d 731 (1955); *Estate of Brown*, 507 S.W.2d 801 (Tex.Civ.App.—Dallas 1974, no writ); 10 E. BAILEY, TEXAS LAW OF WILLS § 561 (Texas Practice 1968). Some of these cases speak only of latent ambiguity. But in spite of language to this effect in some opinions, the leading authorities in this field are in agreement that the supposed distinction between patent and latent ambiguities has no vitality today. 10 E. BAILEY, TEXAS LAW OF WILLS § 561 (Texas Practice 1968); 2 C. McCORMICK & R. RAY, TEXAS LAW OF EVIDENCE § 1683 (Texas Practice 2d ed. 1956). See

*Pruett v. Berkeley*, 405 S.W.2d 433 (Tex. Civ.App.—Waco 1966, no writ).

\* \* \* \* \* \*

Where there is an ambiguity the courts look to the testamentary instrument as a whole and also to circumstances surrounding its execution in determining intent. *Guilliams v. Koonsman*, 154 Tex. 401, 279 S.W.2d 579 (1955). Extrinsic evidence is admissible on the state of the testator's family, on the status of his property, and as to other circumstances relating to him individually and to his affairs to enable the court to determine the testator's meaning in the use of the language in his testamentary instrument. *Federal Land Bank of Houston v. Little*, 130 Tex. 173, 107 S.W.2d 374 (1937); *Peet v. Commerce & E. Street Railway Co.*, 70 Tex. 522, 527, 8 S.W. 203 (1888). See also *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267 (1961).

Thus, extrinsic evidence is generally admissible to determine the testator's intent where there is an ambiguity.

Appellants maintain, however, that even though extrinsic evidence, to a limited degree, may be admissible to show the testator's intent, testimony as to the declarations of a testator is never admissible. However, *Stewart v. Selder*, supra, has held to the contrary in the following:

> The intention of the testator must be found, in the last analysis, in the words of the will, and for that reason his other declarations of intention dealing with the subject of the specific document are generally not admissible. *These declarations may be received only as an aid in resolving certain specific problems of interpretation, such as an equivocation or latent ambiguity.* (Emphasis ours)

■ We further note that it appears of record that appellants waived any right to challenge the testimony on the basis of the Texas Dead Man's Statute, Tex.Rev.Civ. Stat.Ann. art. 3716 (Vernon 1925) because on being deposed B. J. Cohorn and Pauline Hall were questioned concerning any declarations that A. J. Cohorn might have made at the time the will was executed.

A consideration of the facts of the instant case suggests that we are confronted with a latent ambiguity. Black's Law Dictionary, Fifth Edition, defines a latent ambiguity as:

> A defect which does not appear on the face of language used or an instrument being considered. *It arises when language is clear and intelligible* and suggests but a single meaning, *but some intrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings.* (Emphasis ours)

The will clearly and intelligibly devises to B. J. Cohorn a tract of land. However, it was subsequently discovered that such tract does not exist by the description used in the will although the Cohorns did own two tracts of land which are similar in description to the tract described in the will. In the early case of *Patch v. White*, 117 U.S. 210, 6 S.Ct. 617, 29 L.Ed. 860, the United States Supreme Court held:

> It is settled doctrine that as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence. Such an ambiguity may arise upon a will, either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer such name or description; *or*, secondly, *it may arise when the will contains a misdescription of the object or subject; as where there is no such person or thing in existence*, or, if in existence, the person is not the one intended, or the thing does not belong to the testator. (Emphasis ours)

The misdescription in the Cohorn will created such an ambiguity, so that extrinsic evidence was admissible to determine the intent of the testators. Otherwise, the testators by describing a nonexistent tract of land disinherit their son.

■ Next, appellants urge evidentiary challenges as to the propriety of the submission and the jury answer to special issue no. 1. In considering no evidence points, we must review the evidence in the light most

favorable to the finding, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences contrary thereto. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974). Where a finding is being challenged on the basis of factually insufficient evidence, we must review all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The jury determined the following:

### SPECIAL ISSUE NO. 1

From a preponderance of the evidence, find the intention of A. J. Cohorn and wife, Lela Cohorn, in using the language and words found in Paragraph 3 of their Last Will and Testament. Did they intend to devise to B. J. Cohorn:

(a) Tract 81, League 278, containing 177 acres.

(b) Tract 82, League 277, containing 97 acres.

(c) Tract 81, League 277.

Write for your answer either (a), (b), or (c).

*ANSWER:* A

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that B. J. Cohorn was not in default in not offering the Will of A. J. Cohorn for probate within 4 years after the death of A. J. Cohorn?

In connection with this issue you are instructed that no will shall be admitted to probate after the lapse of four years from the date of the death of the testator unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within four years. A party is not in default if the party exercises that degree of care that would have been exercised by a person of ordinary prudence under the circumstances.

Answer "He was" or "He was not."

*ANSWER:* "He was not"

The attorney who drafted the Cohorn will testified in part as follows:

Q When you drew the will from the instructions given you by Mr. and Mrs. Cohorn there was no doubt in your mind at that time that you had selected language to give the survivor a life estate, give Billy Joe a tract of land following the life estate, and to divide the rest equally among the other children.

A Yes. That would be correct.

Q If there had been any doubt in your mind you would have consulted further with your clients about the language of the instrument or the description of the land.

A That's true.

\* \* \* \* \* \*

Q Mr. Snell, within your practice and within your memory has any client ever insisted that you deliberately misdescribe the land in any legal document after you advised him of an error in the description?

A Well, Mr. Flygare, you asked that question—we have clients that occasionally will want you to bend a little bit to state something in a way that is particularly favorable to them, or something like that.

Q Well, I am not talking about something like an income tax return, or about some business—

A Let me put it this way, Mr. Flygare, if it will help, even though my client wanted me to, I would not intentionally include a wrong description in a document.

Q And, specifically, if you had known at the time you drew the will that Tract 81 lay in League 278, you would have called that to A. J. and Lela Cohorn's attention.

A Yes. I would have.

Q Sure.

A If I thought that they had given me a description inconsistent with what appeared on the surface to be different from their intentions I certainly

would have called it to their attention.

\* \* \* \* \* \*

Q   If Mr. and Mrs. Cohorn had told you that they wanted to disinherit Billy Joe that would have been significant to you, and you would have likely put it in your notes, and used much different language in drawing the will.

A   Yes. It would have been significant to me. I would have suggested other language. And, as a matter of fact, I know specifically that there was no suggestion made of disinheriting Billy Joe.

Q   By either Lela or A. J. Cohorn.

A   That's true.

\* \* \* \* \* \*

Q.   In drafting a legal document, such as a deed or will, if you intended to convey or devise only a specific portion, or section, or labor, or tract of land, would you ordinarily specify the portion of the tract you are conveying?

A   I would. I have seen examples to the contrary. But I would.

Q   Well, that is to say if you are intending to convey the south half of Section 100 you would say the south half of Section 100.

A   That's true.

Q   And likewise, if you intended to describe Tract 82, less the south eighty acres, you would say Tract 82, save and except the south eighty acres, or you might say the north ninety-seven acres.

A   I would describe the specific land.

Q   In making your best effort to carry out your understanding of your clients' instructions you selected language which would say to the world an entire tract is going to Billy Joe and not a part of a tract.

A   Well, yes. I believe that is the way this will is, isn't it.

Q   And you did that, because when you drafted the will you firmly believed from the instructions given you that your clients intended an entire tract of land to go to Billy Joe.

A   Yes.

B. J. Cohorn further testified that his father indicated to him that he would be left the labor of land because of some bad advise his father had given him over the years.

In addition Pauline Hall testified that her father intended for B. J. to take the labor of land because "all men like for their sons to own a block of land ... and the rest of the boys owned a block ... I felt like he wanted Bill to own a block of land."

We overrule appellants' evidentiary challenges.

■   Finally, the appellants urge that the trial court erred in consolidating the suit to probate the will of A. J. Cohorn with the suit to construe the will of A. J. and Lela Cohorn. It is established in Texas that a trial court has broad discretion in the matter of consolidation of causes, and its action will not be disturbed on appeal except for abuse of discretion. *Stevenson v. Reese*, 593 S.W.2d 828 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n. r. e.); *United States Fire Insurance Company v. Stricklin*, 556 S.W.2d 575 (Tex.Civ.App.—Dallas 1977), writ ref'd n. r. e. per curiam, 565 S.W.2d 43 (1978).

Tex.R.Civ.P. 174 provides in part:

(a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

In its order to consolidate, the court stated that the causes would be heard and tried on a joint record but that it reserved the right to enter a separate judgment in each cause. Such action would avoid unnecessary costs and delays.

The court in *Williams v. Carter*, 176 S.W.2d 580 (Tex.Civ.App.—Galveston 1943, writ ref'd w. o. m.), held that the district court had the power to render a judgment based upon consolidation and trial together of a suit filed by executrix for construction of the will and a certiorari proceeding to the county court filed by a contestant seeking to annul the will.

In *Montgomery v. Willbanks*, 202 S.W.2d 851 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n. r. e.), the court held that it was not an abuse of discretion for the trial court to consolidate an appeal from the probate court's judgment admitting will to probate and an injunction suit by proponent of the will against contestant to enjoin contestants from collecting a money judgment against proponent for money allegedly appropriated by proponent from testate's estate.

In the case at bar, we do not find any abuse of discretion on the part of the trial court.

We have considered and overrule all points of error.

The judgment is affirmed.