**In the Matter of the ESTATE OF Samuel F. BROWN, Deceased.**

No. 06–95–00103–CV.

Court of Appeals of Texas, Texarkana.

April 10, 1996.

Rehearing Overruled April 30, 1996.

Rehearing Overruled June 4, 1996.

LeRoy Autrey, Autrey, Autrey & Stewart, Texarkana, AR, John R. Mercy, Atchley, Russell, Waldrop, Texarkana, for appellant.

Winford L. Dunn, Jr., Dunn, Nutter, Morgan, Shaw, Texarkana, AR, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

The questions in this appeal are whether a devise and a bequest by Samuel Brown in his will were adeemed because the decedent did not own the property described in them when he died. The trial court found that they were not adeemed. We reverse the trial court's judgment as to the devise and affirm as to the bequest.

Brown died on October 30, 1993. His widow, Susan Taggart Brown, petitioned the county court to probate a will Brown made on July 10, 1991. Suzanna Brown May and Samantha Anne Brown, the decedent's daughters by a previous marriage, objected and removed the matter to district court. After a jury trial, the court denied probate of the will because the decedent did not execute it with the formalities and solemnities required by law to make it a valid will.

Charles Brown, the decedent's brother and executor of his estate, then petitioned the county court to admit to probate another will the decedent executed on December 2, 1983, the day before he married Susan Brown. The court admitted the will to probate, and Charles Brown then petitioned the court to construe the will.

When Brown died, he no longer owned the house at # 19 Holly Ridge, but he and Susan Brown owned a home at 6307 Lakeridge, Texarkana, Texas. The relevant portions of the will are the following:

I give, devise and bequeath to SUSAN K. TAGGART, my home, together with all the contents therein, located at # 19 Holly Ridge, Texarkana, Texas, together with the proceeds of a policy of life insurance with Connecticut Mutual Life Insurance Company, which is to be used to purchase my interest in the professional medical association known as Drs. Short, Townsend, Brown, Bailes, Jones & Sinclare and the clinic building known as Glenwood Medical Center located at 1400 College Drive, Texarkana, Texas.

. . . .

All the rest and residue of my estate, whether real, personal or mixed, wherever situated, I give, devise and bequeath to the hereinafter named Trustee, IN TRUST, for the benefit of my parents, GEORGE FRANKLIN BROWN and LOLA RUTH BROWN, or the survivor of them, and my children, SUZANNA MARIE BROWN and SAMANTHA ANNE BROWN, the same to be administered as follows: . . . .
[followed by terms of the trust]

A real estate partnership and a professional medical association in which the decedent was a member owned "key-man" insurance

policies insuring the lives of the doctors practicing in the partnership, including the decedent. The partnership and association had agreements with the decedent allowing them to purchase his interest in the entities at his death, paying for it with the insurance proceeds. The decedent was not a member of the named association at his death, but was a member of a successor association that used the same Internal Revenue Service tax reporting number. The trial court was not able to determine whether the decedent or the partnership or association owned a specific policy with Connecticut Mutual Life on December 2, 1983, but the partnership did own "key-man" policies on its partners' lives at all relevant times. The court also was not able to determine the terms of a buy/sell agreement that existed on December 2, 1983, if any. The court found that the decedent intended to give his widow his interest in their home on Lakeridge and his interest in the medical association and real estate partnership.

The daughters contend that the devise of the home and the bequest of the insurance proceeds were adeemed and that those assets passed under the will's residuary clause. We construe these contentions as challenges to the legal and factual sufficiency of the evidence and as a challenge to the court's legal conclusions in support of the judgment.

■ Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict on special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, *First Nat'l Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards used in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). When the trial court files specific findings of fact and conclusions of law and there is a statement of facts, the appellate court will sustain the findings if any evidence supports them. The appellate court also will review the correctness of the trial

court's legal conclusions drawn from the facts. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds, Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 894 (Tex.1991); 4 ROY W. MC-DONALD, TEXAS CIVIL PRACTICE § 20:14 (rev. 1992).

■ A bequest or devise can be specific, general, demonstrative, or residuary. *Hurt v. Smith,* 744 S.W.2d 1, 4 (Tex.1987). A devise or bequest is specific if it is described in the will with such particularity that the property is distinguished from all of the testator's other property, and the testator intended for the beneficiary to receive that particular item, rather than cash or other property from his general estate. *Id.*

The trial court here, without explicitly determining whether the devise of the home was specific or general, found that the decedent intended to leave his home, wherever located, to Susan Brown and that the devise would fail only if the decedent owned no home at his death. The trial court called the home a "special asset" to a family and noted that the decedent shared a home with Susan Brown from the day after the will was executed until his death.

■ Ademption occurs where a specific devise or bequest becomes inoperative because of the disappearance of the subject matter from the testator's estate in his lifetime. *Rogers v. Carter,* 385 S.W.2d 563, 565 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.). Absent a contrary intention expressed in the will, the alienation or disappearance of the subject matter of a specific devise or bequest from the testator's estate adeems the devise or bequest. *Shriner's Hosp. for Crippled Children v. Stahl,* 610 S.W.2d 147, 150 (Tex.1980). The doctrine of ademption applies only to specific bequests and devises. *Welch v. Straach,* 518 S.W.2d 862, 867 (Tex.Civ.App.—Waco), *rev'd on other grounds,* 531 S.W.2d 319 (Tex.1975).

■ The trial court did not characterize the devise of the house as specific or general. It did find, however, that the devise could fail if the decedent owned no home at his death. This suggests that the court found the devise

to be a specific one, and we likewise conclude that the devise is a specific one. The clause identifies the home by its physical location and does not purport to devise any other home which the decedent might own in the future.

■ Because the devise was specific, the trial court erred in holding that the gift was not adeemed by the sale of the property identified in the clause. Texas courts have uniformly held that when a provision in a will devises an interest in real property by describing the property's physical location, the devise is adeemed if the property matching the description is not present in the testator's estate upon his death. *Stahl,* 610 S.W.2d at 150; *Rogers,* 385 S.W.2d at 565–67; *cf. Worthen Bank & Trust Co. v. Green,* 237 Ark. 785, 376 S.W.2d 275, 277 (1964).

■ The estate argues that *Welch* supports the trial court's holding that the devise of the home was not adeemed. In *Welch,* however, the testator devised to his wife "the homestead upon which we are living, together with all (personal property) that may be then situated on said homestead." *Welch,* 518 S.W.2d at 868. The court of civil appeals held that the testator intended by this language to give to his wife "whatever homestead he had at the time of his death." *Id.* The devising clause contained no physical description of specific real property, in contrast to the language in Brown's will.[1] We hold that the devise of the Holly Ridge home was adeemed by the sale of the property and that the will therefore conveyed no interest in the Lakeridge home.

The other portion of the will in question here provided as follows:

I give, devise and bequeath ... the proceeds of a policy of life insurance with Connecticut Mutual Life Insurance Company, which is to be used to purchase my interest in the professional medical association known as Drs. Short, Townsend, Brown, Bailes, Jones & Sinclare and the clinic building known as Glenwood Medical Center located at 1400 College Drive, Texarkana, Texas.

The trial court held that this portion of the will was ambiguous and allowed extrinsic evidence to explain the testator's intent. The evidence did not show the existence of any insurance policy with Connecticut Mutual Life. The evidence did show that the decedent was a member in the associations and that the associations had insurance policies on his life that were to be used to buy out his interest on his death. The trial court found that the decedent intended by this provision of his will to have his interests in the professional association and the real estate partnership go to his widow, to be purchased with the insurance proceeds, according to a separate agreement.

The daughters argue that because the evidence shows there was no Connecticut Life policy at his death, the devise was adeemed. They argue that the trial court should have concluded that the decedent intended to give his widow a specific bequest, the proceeds of one existing life insurance policy, the Connecticut Life policy. They argue that since there was no such policy, the bequest was adeemed, and the decedent's interest in the partnership and association should pass through the residuary clause.

■ A patent ambiguity is one apparent on the will's face. It arises on the reading of the will from the words themselves. 95 C.J.S. *Wills* § 636 (1957); 10 ALOYSIUS A. LEOPOLD & GERRY W. BEYER, TEXAS LAW OF WILLS § 47.5 (Texas Practice 1992). A latent ambiguity exists when the will appears

---

1. The estate argues that ademption is not favored by Texas courts. They have cited no authority that supports such a general proposition, however, and we are not aware of any. Courts do seem reluctant to apply the ademption doctrine in the case of a bequest of stock, because of the likelihood that the testator intended merely to treat the stock as a surrogate for cash. *See, e.g., O'Neill v. Alford,* 485 S.W.2d 935, 938–39 (Tex. Civ.App.—Houston [1st Dist.] 1972, no writ). With this qualification, we believe it safe to say that Texas courts apply the ademption doctrine when the appropriate circumstances are present, and especially in the case of a devise of specifically-described real property. *See Shriner's Hosp. for Crippled Children v. Stahl,* 610 S.W.2d 147, 150 (Tex.1980); *Rogers v. Carter,* 385 S.W.2d 563, 565 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.); *Houston Land & Trust Co. v. Campbell,* 105 S.W.2d 430, 434 (Tex.Civ. App.—El Paso 1937, writ ref'd).

to convey a sensible meaning on its face but it cannot be carried out without further clarification. 10 ALOYSIUS A. LEOPOLD & GERRY W. BEYER, TEXAS LAW OF WILLS § 47.6 (Texas Practice 1992). In the past, extrinsic evidence was admissible only to explain a latent ambiguity, but not to explain a patent ambiguity. LEOPOLD & BEYER § 47.5. The modern rule, however, admits extrinsic evidence to show the testator's intent, whether the ambiguity is latent or patent. *See Estate of Cohorn*, 622 S.W.2d 486, 487–88 (Tex.App.—Eastland 1981, writ ref'd n.r.e.) (citing *Anderson v. Dubel*, 580 S.W.2d 404, 408 (Tex. Civ.App.—San Antonio 1979, writ ref'd n.r.e.)).

■ We conclude that the provision contained a latent ambiguity. Although it appears on its face to convey a sensible meaning, it cannot be carried out without clarification, because no evidence showed whether the decedent owned a Connecticut Life policy when he executed the will, and it was the partnership and association, not his wife, who had the right to use the insurance proceeds to purchase his share of the business under the buy/sell agreement. The trial court correctly admitted extrinsic evidence to show the decedent's intent.

Edward Miller, the attorney for the medical association and the real estate partnership, testified that he was not aware of any Connecticut Life policy owned either by Brown or by the association or partnership, but he explained the mechanics of the buy/sell arrangement. The partnership and association buyout agreements provide an arrangement whereby the organizations would use the proceeds of life insurance policies they owned on the partners' lives to buy out a deceased member's interest at rates specified in the agreements.

After reviewing the extrinsic evidence, it seems that the decedent intended to devise his interest in the partnership and association to his widow and that he simply did not correctly understand the mechanics that the buy/sell agreement provided for converting his interest to cash after his death or know of the specific insurance policies that would be used for that purpose. The court correctly determined the testator's intention from the extrinsic evidence and fashioned a ruling that would effect that intent, i.e., the interests would go to Susan Brown and would be subject to purchase by the partners and associates, financed by the insurance policies they had for that purpose.

We reverse the trial court's finding that the will conveyed the decedent's interest in the Lakeridge home and render judgment that his interest in that home did not pass under his purported devise but passed into the trust created in the residuary clause of the will. In all other respects, we affirm the judgment.

CORNELIUS, Chief Justice, dissenting.

I cannot agree with the majority's decision that the devise of Dr. Brown's home was adeemed. In all other respects, I agree with the majority opinion.

The primary goal in interpreting a will is to determine the testator's intent. *Gee v. Read*, 606 S.W.2d 677, 680 (Tex.1980). A bequest or devise can be either specific or general. *Hurt v. Smith*, 744 S.W.2d 1, 4 (Tex.1987). A devise or bequest is specific if it is described in the will with such particularity that the property is distinguished from all of the testator's other property, *and* the testator intended for the beneficiary to receive that particular item, rather than cash or other property from his general estate. In determining the classification of a devise or bequest, the court must discern the testator's intent by looking at the entire dispositive scheme of the will rather than reaching an arbitrary decision based on ritualistic classification.

The trial court here, without explicitly determining whether the devise of the home was specific or general, found that Dr. Brown intended to leave his home, wherever located, to Susan K. Taggart and that the devise would fail only if Dr. Brown owned no home at his death. The trial court called the home a "special asset" to a family and noted that Dr. Brown shared a home with Susan Brown from the day after the will was executed until his death.

"Ademption" occurs when a specific devise or bequest becomes inoperative because the

subject matter is removed from the testator's estate in his lifetime. *Rogers v. Carter*, 385 S.W.2d 563, 565 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.). Ademption applies only when the devise or bequest is a specific one. *Id.* at 566.

Courts are generally reluctant to find ademption, and they use several devices to avoid it, such as (1) finding the gift is general or demonstrative rather than specific; (2) finding that an asset in the estate is, in substance, the property described in the specific devise; (3) finding that the will has special language indicating that other property can take the place of the specifically devised asset; or (4) construing the will as though written immediately before the testator's death. *See, e.g., Welch v. Straach*, 518 S.W.2d 862, 868 (Tex.Civ.App.—Waco), *rev'd on other grounds*, 531 S.W.2d 319 (Tex.1975); *O'Neill v. Alford*, 485 S.W.2d 935, 938–39 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ); *Houston Land & Trust Co. v. Campbell*, 105 S.W.2d 430, 434 (Tex.Civ.App.—El Paso 1937, writ ref'd); *see also* John C. Paulus, *Ademption by Extinction: Smiting Lord Thurlow's Ghost*, 2 Tex.Tech L.Rev. 195, 197 (1971).

Even though the devise of the home may have been a specific devise, I agree with the trial court that a reasonable construction of the devise shows that it was not adeemed. The wording of the devise indicates that Dr. Brown intended to give his wife, not a house located on a specific street, but "my home," which at that time happened to be located at #19 Holly Ridge. The address was not part of the devise, but was merely descriptive of the home's location. One's home is where the person lives, wherever it is located. *Sanchez v. Brandt*, 567 S.W.2d 254 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). When Dr. Brown and Mrs. Brown moved from #19 Holly Ridge to 6307 Lakeridge, their home was relocated to that address, but the home remained a part of Dr. Brown's estate, much the same as the contents of the home admittedly were not adeemed because they were merely relocated. If Dr. Brown had intended to devise the specific house at #19 Holly Ridge rather than his "home," it seems he would have specified "the house" or

"the building" at that address, rather than "my home." *See Welch v. Straach, supra.*

Appellants rely heavily on the case of *Worthen Bank & Trust Co. v. Green*, 237 Ark. 785, 376 S.W.2d 275 (1964), but that case is distinguishable from this case. There, the testatrix not only devised her "home place" and gave its address, but gave a detailed legal description of the land on which the home was situated. The Arkansas Supreme Court used the legal description largely as a basis for holding that the devise was a specific one that was adeemed when the home was sold. We do not have that situation in this case.

I would hold that the devise of the home was not adeemed and that the home on Lakeridge passed to Dr. Brown's widow pursuant to the terms of his will.